

ORIGINAL

Filed

AUG 18 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

1  Alan DeClue
2  1023 Dublin Avenue
   Livermore, California 94551
3  (925) 605-9807
   Decluegt40@gmail.com
4  Self-Represented

5

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

PJH

ALAN DECLUE, an individual; "D.D.", a minor child;

     Plaintiffs,

vs.

COUNTY OF ALAMEDA, a corporation;
SUPERIOR COURT OF ALAMEDA
COUNTY HAYWARD HALL OF JUSTICE,
a corporation;
ALAMEDA COUNTY FAMILY LAW
SERVICES, a corporation;
OFFICE OF THE DISTRICT ATTORNEY
OF ALAMEDA COUNTY, a corporation;
NANCY O'MALLEY, an individual; CITY
OF LIVERMORE, a corporation;
MICHAEL HARRIS, an individual; PAUL
GIACOMETTI, an individual;
TERRA FIRMA, a corporation; BERTHA
CUELLAR, an individual;
VALERIE DECLUE, an individual;
DOES 1 through 20 inclusive,

     Defendants.

Case No. CV20 5808

**PLAINTIFF'S COMPLAINT
FOR DAMAGES**

1. Unwarranted Seizure;
2. Violation of Civil Rights;
3. Deception in The Presentation of Evidence
4. Monell Related Claims
5. Intentional Infliction of Emotional Distress;
6. Violation of State Civil Rights (CC §52.1);
7. Prosecutorial Misconduct/ Failure to Prosecute;
8. Negligence/Breach of Statutory Duties

**[JURY TRIAL DEMANDED]**

Plaintiff's Complaint

## TABLE OF CONTENTS

I.      Jurisdiction and Venue.......................................................................Pg. 3

II.     Parties.................................................................................................Pg. 3

III.    Verified Statement of Facts..............................................................Pg. 6

IV.     First Claim for Relief; Unwarranted Seizure....................................Pg. 12

V.      Second Claim for Relief; Violation of Civil Rights..........................Pg. 14

VI.     Third Claim for Relief; Deception in The Presentation of Evidence..............Pg. 16

VII.    Fourth Claim for Relief; Monell Related Claims..............................Pg. 18

VIII.   Fifth Claim for Relief; Intentional Infliction of Emotional Distress..............Pg. 22

IX.     Sixth Claim for Relief; Violation of State Civil Rights (CC §52.1)................Pg. 23

X.      Seventh Claim for Relief; Prosecutorial Misconduct/ Failure to Prosecute....Pg. 25

XI.     Eighth Claim for Relief; Negligence/Breach of Statutory Duties..................Pg. 26

XII.    Declatory Relief/Compensatory Damages.........................................Pg. 30

## I.  **JURISDICTION AND VENUE**

1.  The Jurisdiction of this Court is in the nature of Federal Question, 28 U.S.C. § 1331; 42 U.S.C. 1983; and not limited to the First, Fourth, Fifth, Ninth and Fourteenth amendments to the United States Constitution.

2.  This Court has further jurisdiction under 28 U.S.C. § 1343 (Civil Rights) and 2201-02 (declaratory relief).

3.  Additionally, supplemental jurisdiction exists with this Court under the provisions of 28 U.S.C. § 1367(a) as to the remaining counts arising under the California Constitution and State Laws from the same set of operative facts.

4.  The operative facts contained herein caused this claim to arise under the provisions of the United States Constitution, and under 42 U.S.C. 1983.

5.  Venue for this action is predicated upon 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b) and (c) as one or more Defendants are located or reside in this District, and a substantial part of the events and omissions giving rise to Plaintiffs' Claims occurred in this District. The United States invokes the expanded service of process provisions of 18 U.S.C. 1965(b). The venue for this matter will be the United States District Court, Northern District Court of California located at: 450 Golden Gate Avenue San Francisco, CA 94102.

## II.  **PARTIES**

6.  Plaintiff Alan DeClue ("MR. DECLUE"), is a citizen of the United States and at all times relevant hereto a citizen of the state of California, residing and doing business in this District at 1023 Dublin Ave. Livermore, CA 94550.

7.  Plaintiff D.D. ("D.D."), is a minor child and a citizen of the United States and at all times relevant hereto a citizen of the state of California, residing in this District. D.D. is the biological daughter of Mr. DECLUE. D.D. is represented by Mr. DECLUE.

8.  Defendant County of Alameda ("ALAMEDA") is a municipal entity existing within this District and doing business as the County of Alameda, the Administration Building is located at 1221 Oak Street, Suite 555 Oakland, CA 94612. ALAMEDA is

responsible for compensating, enriching, rewarding and training employees, and failing to protect. ALAMEDA is sued in its official capacity.

9. Defendant Superior Court of Alameda County Hayward Hall of Justice ("COURT") is a "beneath State level" corporation chartered under and doing business in the County of Alameda and in this District, located at 24405 Amador St Hayward, CA 94544. COURT is responsible for compensating, enriching, rewarding and training employees, and failing to protect. Hayward Court is sued in its official capacity.

10. Defendant Family Law Services ("LAW SERVICES") is a private corporation doing business with and for the County of Alameda and in this District, located at 24405 Amador St Hayward, CA 94544. LAW SERVICES is responsible for compensating, enriching, rewarding and training employees, and failing to protect. LAW SERVICES is sued in its official capacity.

11. Defendant Office of the District Attorney, County of Alameda ("DA") is a business entity chartered under and doing business in the County of Alameda and in this District, headquartered at the René C. Davidson Courthouse, 1225 Fallon St #900, Oakland, CA 94612. DA is responsible for compensating, enriching, rewarding and training employees, and failing to protect. DA is sued in its official and personal capacity.

12. Defendant Nancy O'Malley ("NANCY") is a person(s) under sec. 1983 that operates the Office of the District Attorney, County of Alameda and does business in the County of Alameda, located at the René C. Davidson Courthouse, 1225 Fallon St #900, Oakland, CA 94612, et al., doing business in this District. NANCY, while acting in her personal and official capacity under color of law, is responsible for compensating, enriching, rewarding and training employees and failing to prosecute and protect. Additionally, Nancy is responsible for lack of oversight of her agents and responsible for her agents failing to prosecute and protect. Nancy is sued in her official and personal capacity.

13. Defendant City of Livermore ("LIVERMORE") is a "beneath State level" municipal entity and corporation existing within this District and doing business as the City of Livermore located at 1052 S. Livermore Ave., Livermore, CA 94550. LIVERMORE is

responsible for compensating, enriching, rewarding and training employees, and failing to protect. LIVERMORE is sued in its official capacity.

14. Defendant Michael Harris ("HARRIS") is a person(s) under sec. 1983 that is the chief of police for the City of Livermore, and resides and does business in this District, located at 1110 S. Livermore Ave., Livermore, CA 94550. HARRIS, while acting in his personal and official capacity under color of law, is responsible for compensating, enriching, rewarding and training employees, and failing to protect. HARRIS is sued in his personal and official capacity.

15. Defendant Paul Giacometti ("GIACOMETTI") is a person(s) under sec. 1983 that is a peace officer for the City of Livermore, and does business in this District, located at 1110 S. Livermore Ave., Livermore, CA 94550. GIACOMETTI, while acting in his personal and official capacity under color of law, is responsible for failing to protect.

16. Defendant Terra Firma Diversion/Educational Services ("TERRA FIRMA") is a business entity within this District, located at 30086 Mission Blvd Hayward, CA. 94544. TERRA FIRMA is responsible for compensating, enriching, rewarding and training employees, and failing to protect. TERRA FIRMA is sued in its official capacity.

17. Defendant Bertha Cuellar ("CUELLAR") is an agent for Terra Firma, and does business in this District, located at 30086 Mission Blvd Hayward, CA. 94544. CUELLAR, while acting in her personal and official capacity under color of law, is responsible for violating protected parental rights, racketeering, child trafficking, extortion and black mail, working in concert with COUNTY and COURT, and failing to protect. CUELLAR is sued in her official and personal capacity.

18. Defendant Valerie DeClue ("VALERIE") resides and does business in this District, located 4006 Loch Lomand Way Livermore, CA 94550. VALERIE is responsible for assault and battery, child abuse and neglect, conductor and antagonizor, and fraud upon the Court. VALERIE is sued in her individual capacity.

19. The true names and/or capacities of Defendants are unknown to Plaintiffs, and therefore sue said Defendants by fictitious names (DOES 1-40). Plaintiffs are informed,

believe and thereon allege that each of the Defendants fictitiously named herein as a DOE is responsible for the events and happenings hereinafter referred to, and thereby proximately caused the injuries and damages to Plaintiffs as hereinafter alleged. Plaintiffs will seek to amend this complaint to allege the true names and/or capacities of said fictitiously named Defendants when ascertained. These individuals work in the departments of the County of Contra Costa, California and are sued in their official and individual capacities. These individuals are within this District's jurisdiction.

20. Plaintiff is informed and believes, and on such information and belief alleges, that said Defendants are and at all relevant times herein were the co-conspirators in committing the acts herein alleged and acted under color of law and was employed, compensated, enriched, and rewarded for performing duties within the realm of the corporation known as County of Contra Costa.

21. Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the said allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation.

## III.   STATEMENT OF FACTS

**Verified Statement of Facts**

22. Plaintiff, MR. DECLUE, is a litigant in the matter of Valerie DeClue vs. Alan DeClue Case No.: HF17848891 (Marriage Dissolution) and Case No.: HF17847529 (Domestic Violence Restraining Order) at the Superior Court County of Alameda Hayward Hall of Justice (**See Exhibit 1**).

23. MR. DECLUE and VALERIE dated for approximately ten years and then married. Their marriage lasted for approximately nine and a half years. There never were domestic disputes or violence. This is MR. DECLUE'S first marriage and VALERIE'S second

marriage. MR. DECLUE and VALERIE have a daughter, D.D. approximately eight years of age, and VALERIE has two other daughters from her first marriage, ERIN and BRIANA Renshaw approximately thirty years of age.

24.  The father of ERIN and BRIANA is not in the picture. He fought for custody years ago when he and VALERIE divorced; however, using her narcissistic tactics VALERIE prevailed and moved away with her two girls. It is unclear if ERIN and BRIANA have reached out to their biological father. Both were raised and gaslighted solely by VALERIE after the divorce.

25.  On January 21, 2017, in MR. DECLUE and VALERIE'S home, located at 4006 Loch Lomand Way in Livermore, VALERIE became enraged after seeing (candidate) Donald Trump on television and began to push her political views on MR. DECLUE. MR. DECLUE was playing with his daughter, D.D., in the family room when he then went into the kitchen to calm VALERIE down. VALERIE then threatened to call the police against MR. DECLUE for, falsely, abusing her. VALERIE then ran upstairs as MR. DECLUE followed trying to calm her down. VALERIE punched MR. DECLUE on the left side of his face leaving a significant bruise the next day. As VALERIE went through a rage, MR. DECLUE wrapped his arms around VALERIE and waited until she gave up and released the phone. MR. DECLUE called 911 in grave concern for D.D. (**See Livermore Police Report No.: 17-256, Exhibit 1**).

26.  VALERIE informed Livermore Police Officer Craig Giacometti that MR. DECLUE had pushed her around and abused her when clearly that was not the case. Giacometti reported at the time that he did not see any bruises on MR. DECLUE'S face. MR. DECLUE packed some belongings and left for the night to let things cool off. ERIN and BRIANA were not living at this address at the time of the incident and were not present during the altercation.

27.  At approximately 1:44 p.m. on January 22, 2017, VALERIE had contacted their friend Aaron Hill, who is also a realtor who sold MR. DECLUE and VALERIE their home on Loch Lomand Way. VALERIE requested Hill to find a new rental for her.

28.  On January 22, 2017, MR. DECLUE contacted Giacometti to show him the bruise on his face. Giacometti saw the bruise and told MR. DECLUE that he messed up had to speak with his superior officers. Shortly after, he informed MR. DECLUE that VALERIE is

currently getting arrested for Ca. Penal Code § 273.5 (Corporal Injury to Spouse) and that he needs to go to their home to take custody of D.D. As VALERIE was taken away, her daughters ERIN and BRIANA were present and screamed at MR. DECLUE accusing him of domestic abuse. It appeared to MR. DECLUE that before VALERIE was arrested, she had coached ERIN and BRIANA due to certain phrases that caught MR. DECLUE'S attention.

29. On January 23, 2017, VALERIE was released with all charges dropped. VALERIE had hired Family Law Attorney Cynthia CAMPANILE. It is unknown to MR. DECLUE when CAMPANILE was hired. Due to a preponderance of evidence CAMPANILE pulled strings to have her released.

30. On or around January 30, 2017, VALERIE was granted a Domestic Violence Restraining Order ("DVRO") against MR. DECLUE, violating due process, claiming she is afraid of MR. DECLUE and in fear for her life, among numerous other false allegations; as well as her daughters, even though ERIN and BRIANA were living in Oakland, Ca. at the time. ERIN had submitted a declaration filled with lies and false allegations to help support the granting of the domestic violence restraining order.

31. During this time VALERIE had stolen $59,000.00 of MR. DECLUE'S a joint bank account between them. There was only approximately $163,000.00 in that joint account and MR. DECLUE deposited all of that money, which he is the owner of. MR. DECLUE did not approve of VALERIE stealing the $59,000.00. MR. DECLUE withdrew the remaining balance and closed that account. Later, MR. DECLUE found out through hiring a forensic accountant that VALERIE had also purchased a house in Oakland, Ca. during their marriage and never told MR. DECLUE about it. This was news to MR. DECLUE. There were also other purchases of assets that MR. DECLUE never knew about. Additionally, the forensic accountant showed MR. DECLUE that VALERIE was stashing away large amounts of money from her paychecks that MR. DECLUE never knew about.

32. MR. DECLUE hired Matthew OLIVERI to represent him in approximately February 2017. MR. DECLUE paid OLIVERI over $30,000.00 over a period of approximately nine months. OLIVERI failed to dispute the false allegations by VALERIE and did not properly represent MR. DECLUE at several hearings.

33.  The Domestic Violence Restraining Order case and the Marriage Dissolution Case became combined in March by Judge Jason CLAY that covered up MR. DECLUE'S side of the story with evidence and police reports.

34.  MR. DECLUE contacted a lady he knows in the Alameda County District Attorney's office, Annie Esposito ("ESPOSITO"), to find out how VALERIE was released so soon and why charges were dropped. When MR. DECLUE asked her questions, she became very defensive. MR. DECLUE asked why she was released and Esposito replied that MR. DECLUE did a citizen's arrest. MR. DECLUE disputed that allegation and asked again why she was released, Esposito then told MR. DECLUE that Alameda County District Attorney Nancy O'Malley owed CAMPANILE a favor and quickly hung up the phone.

35.  On May 3, 2017, MR. DECLUE appeared to a court hearing where he walked in on OLIVERI and CAMPANILE looking at MR. DECLUE'S Income and Expense Declaration discussing how much money they can strategically acquire out of MR. DECLUE. Looking shocked, OLIVERI questioned MR. DECLUE as to why he was there and instructed him to leave. MR. DECLUE stayed. Both attorneys then met Judge Jason CLAY in his chambers. It was shortly after where MR. DECLUE received an invoice to pay CAMPANILE $10,000.00 for attorney's fees. MR. DECLUE refused to pay this as there was collusion behind it. In early 2018, Plaintiff, MERRY DeClue ended up paying the fee in fear that MR. DECLUE would be sent to jail.

36.  After the DVRO was filed, MR. DECLUE lost custody and has only been able to see D.D. for two hours supervise on weekends at Terra Firma in Hayward, ca. Each time MR. DECLUE is afforded to see his daughter he has to pay a $100.00 fee to Terra Firma. The owner, Bertha ("BERTHA"), is friends with CAMPANILE and they have known each other for many years. Terra Firma has been doing business ruining families for many years in Alameda County. It is rumored that BERTHA does favors and is giving monetary kick-backs to CAMPANILE. MR. DECLUE has paid over $20,000.00 to BERTHA'S extortion in order for him to see his daughter.

37.  In May, Cheryl HICKS was appointed Minors Council, attorney for D.D. HICKS failed to communicate with MR. DECLUE and review his documents and evidence. HICK'S also failed to properly represent D.D. and was also operating in prohibited activities pursuant to illegal contracting. MR. DECLUE never authorized HICK'S to be Minors Council for D.D.

38.  A restraining order hearing occurred on July 12, 2017, where OLIVERI did not show and he instructed MR. DECLUE not to show up also. This hearing was vital in defeating the erroneous Domestic Violence Restraining Order and achieving child custody. CAMPANILE and VALERIE prevailed. CLAY ordered the DVRO remain in effect for three years, pay CAMPANILE her fee's and keep attending Terra Firma. CLAY also ordered the parties to seek a custody evaluator, Dr. Rhonda Barovsky ("BAROVSKY"). It appears this was intentional and set up.

39.  BAROVSKY tried multiple times to force MR. DECLUE to contract with her. After refusing her services, BAROVSKY filed with the court a defaming letter against MR. DECLUE. MR. DECLUE was polite to her but refused her services because he knew this was a violation of due process and something illegal was going on.

40.  Over the nine approximate months that OLIVERI represented MR. DECLUE, MR. DECLUE had tried to communicate at least a minimum of fifty calls and emails which OLIVERI never responded. MR. DECLUE was never able to get through and speak to his lawyer. OLIVERI was fired in November 2017 and he was instructed by MR. DECLUE to return his money. OLIVERI still has not complied to this day.

41.  These events have caused severe emotional distress and irreparable damage among to MR. DECLUE, MERRY and D.D., and not limited to, sleepless nights, physical pain and depression. Plaintiffs have seen therapists to get through these horrific times also.

42.  In January 2018, MR. DECLUE hired Family Law Attorney Randy Thomas ("THOMAS") out Lodi, California. MR. DECLUE paid him $45,000.00 up front in exchange for guaranteed child custody and dismissal of the restraining order.

43.  MR. DECLUE had previously filed a Peremptory Challenge (December 2017) to CLAY calling him out on his judicial bias, criminalities and collusion with attorneys. Keep in mind that CLAY was recently appointed judge by Governor Brown in or around August 2017. MR. DECLUE also filed a Case Management Statement for a trial with a jury.

44.  On February 6, 2018 THOMAS represented MR. DECLUE and withdrew the pleadings MR. DECLUE had filed. At the beginning of the hearing, CAMPANILE frantically pulled MR. DECLUE aside informing him that they want to settle. CLAY was very nervous this day also, he would not look at MR. DECLUE when speaking. After the hearing, speaking to MR. DECLUE, THOMAS made reference about CLAY being scared of him. THOMAS

had done some investigating in this matter and has discovered many things that have not gone appropriately in this case. To this day THOMAS has not informed MR. DECLUE of what he has discovered also and refuses to tell him.

45. Between March through June CAMPANILE has harassed MR. DECLUE by mailing frivolous discovery motions and attempting to steel more money from him.

46. THOMAS was relieved from representing MR. DECLUE in June however was not dismissed from MR. DECLUE'S legal matters until he paid back $40,000.00 to MR. DECLUE for misrepresenting him and not fulfilling his side of the contract. THOMAS has refused to pay back the money he owes MR. DECLUE.

47. At the beginning of 2018, MR. DECLUE also sent a complaint about OLIVERI to the Chief Trial Counsel. Investigator Brulio ("BRULIO") took on MR. DECLUE'S matter. After about two months of investigating, MR. DECLUE had a phone conversation with Brulio. Brulio stated that his case is very bad, very messy and that he cannot handle it. He passed off the investigation to Investigator Shannon Lozada who sent him an application that MR. DECLUE has to pay for in order to obtain his money back from OLIVERI. Yet again MR. DECLUE has been taken advantage of and no one is being held accountable. LOZADA is extorting MR. DECLUE.

48. The Commission on Judicial Performance and the State Bar Chief Trial Counsel has falsely advertised in holding lawyers accountable. The Commission on Judicial Performance and the State Bar Chief Trial Counsel refuse to assist MR. DECLUE.

49. CLAY sent this matter to Judge Thomas Nixon ("NIXON") for trial. NIXON did nothing with this matter other than delay proceedings and force MR. DECLUE to pay more extortion money to see his daughter. COUNTY is responsible for all of the egregious acts against Plaintiffs. Due Process has been VIOLATED TO THE EXTREME and has caused severe irreparable injury and harm to Plaintiffs.

50. All Defendants in this matter have premeditated and predetermined to harm Plaintiffs, because they have been in law long enough, they know how to take advantage of MR. DECLUE knowing MR. DECLUE does not know law or procedure. Defendants in this matter knowingly and willfully violated already protected constitutional rights of Plaintiffs in which the following laws were made to prevent:

## IV.   **FIRST CLAIM FOR RELIEF**

**(Procedural Due Process, Unlawful Seizure, Invasion of Privacy, Interruption of Familial Association)**

**(ALL DEFENDANTS)**

51.  Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

52.  Defendants, and each of them, at all relevant times herein were acting under color of law when they jointly acted, or knew and agreed and thereby conspired, to violate Plaintiffs' constitutional rights by, but not limited to, removing, detaining, and continuing to detain D.D. from the care, custody, and control of her father, without proper or just cause and/or authority, in the absence of any exigency, and without first obtaining a lawful warrant or lawful court order.

53.  At all times relevant herein, the right to familial association guaranteed under the First, Fourth, and Fourteenth Amendments to the United States Constitution was so "clearly established" that any reasonable government agent in Defendants' situation would know it is unlawful to seize or prevent a child from the care, custody, and control of their parents in the absence of exigent circumstances without first obtaining a warrant to do so. Furthermore, any reasonable government official would know that to do so would constitute a violation of the parents' well-elaborated constitutional right to live together without undue governmental interference.

54.  Defendants, and each of them, jointly acted or conspired to seize and prevent the child from being with her father, as described above, knowing that no warrant or lawful order authorizing the child's seizure or prevention issued and that exigent circumstances did not exist.

55.  Defendants also knew that MR. DECLUE did not consent, and was deprived of consenting, to D.D.'s unwarranted seizure and prevention on either January/February, 2017. Defendant VALERIE already KNEW, that by using family law as a weapon, that she can

make an attempt to prevent minor child D.D. from being with her father, in which Penal Code 278.5 prevents; BECAUSE, VALERIE has already been successful at steeling her two older daughters from their biological father.

56.  At each [family law] 'hearing', VALERIE'S lawyers, Cynthia Campanile and Jason Elter, provided the Court with NO evidence, ever, that MR. DECLUE is abusive and dangerous or incompetent, pursuant to Cal. Evid. C. §§250, 500 and 550. There was no evidence offered that D.D. was in immediate danger of suffering serious bodily injury at the hands of her father at any point.

57.  In February, 2017, when D.D. was seized and prevented from being with her father, no Defendant had any evidence indicating that D.D. was in an emergency situation requiring seizure or prevention from her father. At the time when VALERIE was imprisoned for Domestic Assault, by Defendant GIACOMETTI, D.D. was completely uninjured and in the care of her father. It is a FACT, already proven and can be proven at trial, that MR. DECLUE is the more competent and safer parent for D.D. to be with, given VALERIE'S violent history as a mother/spouse.

58.  All Defendants failed to seek and/or obtain such a lawful warrant prior to seizing and preventing D.D. Furthermore, the Court knew and willfully disregarded VALERIES assault and battery on MR. DECLUE, seeing that she is the more dangerous parent for D.D. to be with, violating Ca. Fam. C. §§3010, 3020 and 3040 and U.S. Supreme Court rulings protecting parental rights.

59.  Superior Court Judge Jason Clay (Commissioner at the time) who administered this case, was under trained and educated and not lawfully competent to be fair and impartial pursuant to Ca. Judicial Code of Conduct for Ca. Judges. Judge Jason Clay made MR. DECLUE a target due to his financial success for means already mentioned above.

60.  Due to Defendants' knowing violation of Plaintiffs' rights, Plaintiffs are entitled to recover, and shall seek, punitive damages against the Defendants, and each of them, subject to proof at trial.

## V.    SECOND CLAIM FOR RELIEF

### (Deprivation of Constitutional Rights – Non-Consensual and Coercive Procedures)

### (ALL DEFENDANTS)

61.  Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

62.  At all times relevant hereto, the constitutional right to remain free of non-consensual intrusive [family law] procedures was "clearly established" such that any reasonable person in Defendants' circumstances would know that it is a violation of the parents' constitutional rights to subject the child to forcefully stay with one parent, especially in this instance, stay with an abusive parent (mother) without just cause, parental consent from father or due process The equal protection clause of the Fourteenth Amendment guarantees D.D. the right to be with MR. DECLUE while preventing Defendants from encroaching on their freedoms. Law and court procedures that are "fair on their faces" but administered "with an evil eye or a heavy hand" was discriminatory and violates the equal protection clause of the Fourteenth Amendment. *Yick Wo v. Hopkins*, 118 US 356, (1886). Even when blood relationships are strained, parents retain vital interest in preventing irretrievable destruction of their family life; if anything, persons faced with forced dissolution of their parental rights have more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. *Santosky v. Kramer*, 102 S Ct 1388; 455 US 745, (1982).

63.  While acting under color of law, Defendants illegally released VALERIE from prison and dismissed charges against her without due process. The COURT accepted the matter as if it did not exist also. Defendants HARRIS and GIACOMETTI willfully failed to follow up and restrain VALERIE preventing her from carrying out her premeditated agenda that allowed Plaintiffs to be harmed. After VALERIE filed her frivolous DVRO, HARRIS and GIACOMETTI knew and should have refused to seize D.D. from her father's custody.

64. The COURT knew it had no jurisdiction or authority to implement a DVRO against MR. DECLUE and D.D. when it was in the presence of exculpatory evidence of VALERIES' bad behavior. The COURT should have sent VALERIE back to jail to finish being charged by DA. Plaintiff's safety and rights would not have been jeopardized and the COURT would not have acted outside of the scope of its authority, "the government and courts are prohibited from interfering with the fundamental rights of natural parents to raise their children." *Troxel v. Ganville*, 530 US 57  US. S.Ct. (2000).

65. Defendants acted under color of law and breached statutory regulations that violated due process and equal protection by prolonging and instigating divorce proceedings, in an attempt to coerce MR. DECLUE to 'paying for more justice'. 42 U.S.C. 1983 and 1985 prevent this outrageous conduct from happening. The COURT violated and deprived Plaintiffs by minimizing their time together and charging MR. DECLUE $100.00 a visit at TERRA FIRMA in Hayward, CA.

66. BERTHA at TERRA FIRMA witnessed the atrocities that Defendants knowing and willfully committed against Plaintiffs, and did nothing about it. Instead, BERTHA aided and abetted in this matter collecting over $20,000.00 from MR. DECLUE in order for him to see his daughter for less than two hours two times a week. Defendants are engaged in racketeering, depriving Plaintiffs of their protected rights to each other.

67. Defendants knew what constitutionally should have happened:  (1) VALERIE should have been properly charged and sent back to jail to finish being charged with domestic assault and battery; (2) divorce signed off; (3) assets split before/after marriage; (4) 50/50 schedule with minor child D.D. Instead, Defendants violated and caused irreparable harm to Plaintiff's by prolonging proceedings, steeling Plaintiffs assets, allowed VALERIE and her attorneys to lie in court, disregarded exculpatory evidence against VALERIE, sent D.D. to different kinds of harmful physical and psychological therapy's, deceived Plaintiff into paying more money for justice, and deprived Plaintiffs from each other (violating equal protection).

68. No reasonable agent in Defendants' position could have believed that their

conduct, i.e., agreeing to and supporting the multiple unwarranted therapy's performed on
D.D. without parental consent under the circumstances then presented, was lawful.

69.  As a direct and proximate result of these Defendants' misconduct, Plaintiffs
have suffered, and will continue to suffer, general and special damages according to proof at
trial, including but not limited to, physical and/or mental anxiety and anguish, among other
things.

70.  Due to the malicious, wanton, callous, reckless, wrongful and despicable nature of
the Defendants' misconduct, as herein alleged and described, Plaintiff is entitled to recover
punitive damages against the individual Defendants, and each of them, in accordance with law
and subject to proof at trial.

## VI.   **THIRD CLAIM FOR RELIEF**
### (*Deception in The Presentation of Evidence to the Court*)
### (ALL DEFENDANTS)

71.  Plaintiffs hereby incorporate by reference and re-allege each and every allegation
set forth in each and every preceding paragraph of this Complaint, as though fully set forth
herein.

72.  Each act, as alleged in this and each Count of this Complaint, was performed under
color of law.

73.  The right to be free from judicial deception in [family law] proceedings was clearly
established prior to 2017, such that any reasonable government official in Defendants'
situation would know that it was unlawful to lie, fabricate evidence, or suppress material
exculpatory evidence in any civil court proceedings.

74.  In the context of a child abuse proceeding, the constitutional right to be free from
the knowing presentation of false or perjured evidence is clearly established. *Hardwick v. Cty.
of Orange*, 844 F.3d 1112, 1118 (9th Cir. 2017). "No official with an IQ greater than room
temperature in Alaska" could claim that he or she did not know that judicial deception
violated both state and federal law.

75. In October 2019, Judge Jason Clay ordered the destruction of MR. DECLUE'S evidence of his restraining order case which included VALERIE'S police report and evidence of her assault and battery against MR. DECLUE. Judge Jason Clay, et al., knew they were being sued in federal for what appears to be egregious civil rights violations and crimes, under color of law, Case No.: 18-cv-04390, against MR. DECLUE. Furthermore, the Court allowed VALERIE to lie in her declarations and provide no support, in an attempt to delay D.D. from being with her father.

76. Defendants also knew that they could keep instigating and prolonging the divorce proceedings by having MR. DECLUE fill out contractual forms (FL-# Forms) that he had no idea what he was filling out or getting into, which is a common deceptive tactic used by Defendants. Defendants knew that unconstitutional domestic violence restraining orders are more commonly used against the more competent parent (MR. DECLUE), while disregarding MR. DECLUE'S exculpatory evidence and pleadings that exist on record, so that they could stall the matter.

77. Defendants knew that through their training and experience by the County of Alameda of the fact that through family law, they could take advantage of Plaintiffs and were aware that by their actions they would have far reaching implications and impacts on MR. DECLUE'S family.

78. Defendant VALERIE and her attorney's knew that their declarations and motions would be accepted into evidence and relied upon by the court in making its decisions. By law, Defendants' petitions and declarations is required to be verified under penalty of perjury and must not contain false and/or untrue statements or information. The matter set out in the Petition is required to be honest, accurate, and complete in all material respects. In addition, to the extent exculpatory information exists, it is required to be disclosed to the Court on the face of the petition. VALERIE and her attorney's, for whatever reason, failed to meet these standards.

79. The court knew about (1) VALERIE'S assault and battery against MR. DECLUE; (2) VALERIE'S jail time; (3) MR. DECLUE'S divorce case against VALERIE prior to hers;

(4) VALERIE hired a family law attorney, Cynthia Campanile, prior to her domestic assault against MR. DECLUE; (5) VALERIE stole more than $59,000.00 out of MR. DECLUE'S bank account as soon as she was released from jail; (6) VALERIE bought property in Oakland, CA just prior to her domestic assault; (7) the net worth of MR. DECLUE; (8) the relationship between the court, attorneys, mediators , evaluators and other party's appointed in this matter, and still, punished Plaintiffs as if they are the criminals in this matter.

80. Each document filed by VALERIE'S attorneys repeated the false statements and exhibits. Indeed, much of the content from each document was not verified without any independent verification to determine if the statements therein were even accurate.

81. As a result of the continued repetition of false statements and repeated failures to provide known exculpatory information, D.D. continued to be wrongfully detained from MR. DECLUE'S rightful custody.

82. The above identified false statements and the suppressed exculpatory evidence are only examples. They do not constitute the full extent of Defendant's deception in the presentation of evidence to the Family Law Court in the multiple reports filed over the course of several years.

83. Due to the intentional and despicable nature of the Defendants' misconduct, as described throughout, Plaintiffs are entitled to recover, and shall seek, punitive damages against the individual Defendants, and each of them, subject to proof at trial.

## VII.   FOURTH CLAIM FOR RELIEF

### (*Monell*-Related Claims – Deprivation of Constitutional Rights)
### (ALL DEFENDANTS)

84. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein. Each act, as alleged in this and each Count of this Complaint, was performed under color of law.

85.  At all relevant times herein, Defendants, established and/or followed policies, procedures, customs and/or practices (hereinafter collectively referred to as "policy" or "policies") which policies were the cause of violation of Plaintiffs' constitutional rights granted to them pursuant to 42 U.S.C. § 1983, as well as the case of *Monell v. New York City Department of Social Services* (1978) 436 U.S. 658, including those under the First, Fourth and Fourteenth Amendments; including but not limited to:

a.  The police of using undue influence, coercion and/or duress to cause MR. DECLUE to enter into alleged "voluntary" agreements, including with the threat of removal of his child if he do not move out;

b.  The policy of detaining and/or removing a child from her parent MR. DECLUE, without exigent circumstances (imminent danger of serious bodily harm), lawful court order or consent of D.D.'S parent or legal guardian;

c.  The policy of using false and misleading information and failing to provide exculpatory information in the application for a warrant or lawful court order to remove and detain a child from the home of her parent MR. DECLUE;

d.  The policy of detaining and/or removing children from their parent MR. DECLUE, and failing to determine whether the scope of the intrusion was reasonably necessary to avert the specific injury;

e.  The policy of causing minor children to be dependents of the COUNTY, VALERIE and continuing to be dependents, removing their legal and physical custody from their competent parent MR. DECLUE,  beyond a reasonable period after the alleged basis for any such removal and continued detention is negated;

f.  The policy of using intimidation, fear, threats, coercion, retaliation, misrepresentation and duress during their investigation of allegations or fear of child abuse and/or neglect, and during the pendency of [family law] proceedings;

g.  The policy of using trickery, duress, fabrication and/or false testimony or evidence, and in failing to provide exculpatory evidence, in preparing and presenting reports and court documents to the Court including warrants for removal of a child from the care custody and

control of their safer parent MR. DECLUE,  causing an interference with the Plaintiffs' rights, including those as to due process and familial relations and injuring and harming them;

h.  The policy of signing and presenting petitions in [family law] actions under the penalty of perjury without personal knowledge of the truth and/or accuracy of the allegations contained therein;

i.  The policy of, or lack thereof, causing medical/therapy examinations and/or procedures of a minor child without the knowledge, consent, presence, and/or authorization of MR. DECLUE, and without exigency (imminent danger of serious bodily harm), without medical need, and without court order;

j.  The policy of failing to promptly provide exculpatory and/or relevant and related evidence, testimony, reports and information regarding the ongoing investigation of divorce matters, when such information would negate the basis for continued detention of the minor children; and

k.  By acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train and supervise its officers, agents and employees, in providing the Constitutional protections guaranteed to individuals, including those under the First, Fourth and Fourteenth Amendments, and under California law, when performing actions related to the investigation of child abuse and neglect, including dependency type proceedings.

l.  The policy of witnessing crimes and/or violation of court orders and not enforcing the law, equality in failing to protect all parties.

86.  Defendants had a duty to Plaintiffs at all times to establish, implement and follow policies, procedures, customs and/or practices which confirm and provide for the protections guaranteed them under the United States Constitution, including the First, Fourth and Fourteenth Amendments; to use reasonable care to select, supervise, train, control and review the activities of all agents, officers and employees in their employ, and further, to refrain from acting with deliberate indifference to the Constitutional rights of Plaintiffs herein so as to not cause them the injuries and damages alleged herein.

87.  COUNTY, SUPERIOR COURT, CITY OF LIVERMORE and each Individual Defendant breached its duties and obligations to Plaintiffs, including but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review their agents and employees as to their compliance with Constitutional safeguards; and by permitting named Defendants, and Does 1 through 20, Inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged.

88.  Defendants' deliberate failure to train its employees, officers, and/or agents on these established constitutional protections was a substantial factor in causing the Plaintiff's harm, in that employees working for the Defendant County of Fresno and the City of Madera were unfamiliar with and oblivious to the Plaintiffs' constitutional rights, when Defendants, seized and prevented D.D. from being with her father without judicial authorization, parental consent, and in the absence of exigent circumstances.

89.  This policy of deliberate indifference, and the lack of prophylactic policies and training in the face of a known need for such policies and training was a substantial factor in causing the Plaintiffs harm, Defendants knew that by breaching the aforesaid duties and obligations that it was foreseeable that they would, and did, cause Plaintiffs to be injured and damaged by their wrongful policies and acts as alleged herein and that such breaches occurred in contravention of public policy and as to their legal duties and obligations to Plaintiffs.

90.  These actions, or inactions, of Defendants are the legal cause of injuries to Plaintiffs as alleged herein; and as a result thereof, Plaintiffs have sustained general and special damages, as well as incurring attorney's fees, costs and expenses, including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

///

## VIII.   FIFTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

### (By All Plaintiffs Against All Defendants and Does 1 through 10, inclusive)

91.  Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

92.  The conduct of the Individual Defendants, and each of them, was extreme and outrageous in that they abused their position of authority and their relationship with Plaintiffs, and each of them. The relationship between Plaintiffs and the Individual Defendants was such that the Individual Defendants, and each of them had real, or apparent, power to affect all of the Plaintiffs' interests.

93.  Defendants' conduct in threatening Plaintiff MR. DECLUE to leave his child with her abusive mother under threat of having his child seized and placed with their abusive mother, and then doing exactly that anyway, was extreme and outrageous.

94.  Defendants' conduct in submitting false statements to the Court in order to continue detaining D.D. from MR. DECLUE was extreme and outrageous. No reasonable official would have believed that such conduct was acceptable and yet Defendants submitted falsehoods and suppressed known exculpatory information in their filings with the Court.

95.  Moreover, Defendants, and each of them, knew that their conduct would likely result in harm due to mental distress, among other things. But, they continued in this pattern of conduct over several years.

96.  Defendants, and each of them, acted with reckless disregard of the probability that Plaintiffs, and each of them, would suffer emotional distress in that they gave little or no thought to the probable effects of their conduct; and, as a direct and proximate result of Defendants' conduct, Plaintiffs, and each of them, did suffer severe emotional distress. The conduct of Defendants, and each of them was a substantial factor in causing the severe emotional distress suffered by each of the Plaintiffs herein.

97.  Defendants COUNTY and CITY OF LIVERMORE are liable for all injuries proximately caused by an act or omission of the Individual Defendants, who at all relevant times were acting within the course and scope of their duties as employees of COUNTY and/or CITY OF LIVERMORE, as alleged herein. Thus, CITY OF LIVERMORE is vicariously responsible, and liable, for all damages naturally flowing from the misconduct of Defendant HARRIS and GIACOMETTI while County is vicariously responsible, and liable, for all damages naturally flowing from the misconduct of all other named Individual Defendants, in an amount according to proof at trial.

98.  The acts and omissions of the Individual Defendants, and each of them, as herein alleged were intentional and/or done with a conscious disregard for Plaintiffs' rights. Because the Individual Defendants acted with a wanton and reckless disregard of Plaintiffs' obvious and known rights, Plaintiffs are entitled to recover punitive damages against the Individual Defendants as according to proof at trial.

## IX.   SIXFTH CLAIM FOR RELIEF

### (Violation of State Civil Rights Civil Code §52.1)

### (ALL DEFENDANTS)

99.  Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

100.  Defendants were at all times relevant to this Claim the conductor, organizer, host, chain of command, authority, supervisor, conspirator and perpetrator at which alleged events happened.

101.  All Individual Defendants, and Does 1 through 20, Inclusive, are individuals who were acting under color of law in conducting an investigation and proceedings pursuant to California law, including as to proceedings described in Government Code § 820.21(a).

102.  To the extent not separately responsible, Defendant COUNTY, et al., is vicariously responsible for these Defendants' conduct under Government Code § 815.2; and said conduct is not immunized, including by Government Code §820.21.

103.  As a result of the conduct of said individual Defendants, and Does 1 through 20, Inclusive, as adopted and incorporated by paragraphs previously set forth herein, Defendants and each of them, have violated Plaintiffs' rights by interfering with Plaintiffs' rights by threats, intimidation, or coercion, or attempts thereto, including to force Plaintiffs to conform to their demands, and in retaliation of Plaintiffs' exercise of their rights, causing the violation and interference with the exercise or enjoyment of Plaintiffs' rights secured by the laws and Constitution of the United States, and the Constitution and laws of the State of California, including by using fabricated evidence, failure to enforce orders, failure to disclose exculpatory evidence, and by obtaining and/or attempting to obtain, evidence and testimony by duress, fraud and undue influence, in juvenile dependency investigations and proceedings.

104.  As a direct and proximate result of the aforementioned conduct of Defendants, and each of them, Plaintiffs have suffered and will continue to suffer damages, including great emotional and psychological distress, humiliation and mental anguish, the nature and amount of which will be shown according to proof at trial.

105.  These violations of the Plaintiffs' rights by Defendants, Inclusive, and each of them, are guaranteed and protected by Civil Code §52.1 entitling Plaintiffs to damages and relief, including compensatory and punitive damages, other equitable relief, injunctive relief, statutory civil penalty (including $25,000.00 as to each individual Defendant).

106.  In doing the acts alleged in this Complaint, Defendants, and each of them, knew or should have known, that their actions were likely, or would, to injure and damage Plaintiffs, and Plaintiffs are informed and believe, and thereon allege, that the individual Defendants, and each of them, intended to cause injury and damage to Plaintiffs, and/or acted with a willful and conscious disregard of Plaintiffs' rights, thus entitling Plaintiffs to recover punitive damages as against said individual Defendants.

## X.   SEVENTH CLAIM FOR RELIEF

### (Prosecutorial Misconduct, Failure to Prosecute)

### (ALL DEFENDANTS)

107.  Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

108.  Defendants violated and/or breached mandatory and non-delegable duties. This includes, but is not limited to, the criminal due process codes of California. Defendant DA had a duty and responsibility to prosecute VALERIE and safeguard D.D. from her. Instead, DA failed to prosecute, as per MR. DECLUE'S request, and released VALERIE the next day.

109.  Defendant DA worked in concert with VALERIE'S lawyer, Cynthia Campanile, to release VALERIE due to the close relationship between them. Within three days from her release, VALERIE commenced her premeditated plan to file a domestic violence restraining order and divorce, in retaliation, against MR. DECLUE in order to take D.D. from him and put her in harm's way. In addition, to pitting the Courts and Defendants against MR. DECLUE to strategically acquire his finances and assets.

110.  Had the DA due their due diligence and follow the law and charge VALERIE for domestic violence after assaulting MR. DECLUE in the face, VALERIE'S premeditated plan would not have happened.  Instead Defendants conspired together to harm Plaintiffs.

111.  Defendants are liable for all injuries proximately caused by an act or omission of the Individual Defendants, who at all relevant times failed to act within the course and scope of their duties as employees of COUNTY and/or CITY OF LIVERMORE and/or DA, as alleged herein. Thus, Defendants is vicariously responsible, and liable, for all damages naturally flowing from the misconduct of NANCY and DA while County is vicariously responsible, and liable, for all damages naturally flowing from the misconduct of all other named Individual Defendants, in an amount according to proof at trial.

112.  The acts and omissions of the Individual Defendants, and each of them, as herein alleged were intentional and/or done with a conscious disregard for Plaintiffs' rights. Because

the Individual Defendants acted with a wanton and reckless disregard of Plaintiffs' obvious and known rights, Plaintiffs are entitled to recover punitive damages against the Individual Defendants as according to proof at trial.

## XI.   EIGHTH CLAIM FOR RELIEF

### (Negligence/Breach of Mandatory Statutory Duties)

### (ALL DEFENDANTS)

113.  Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

114.  Defendants violated and/or breached mandatory and non-delegable duties. This includes, but is not limited to, those set forth in regulations in the California Department of Social Services (CDSS) Manual of Policies and Procedures (MPP) established pursuant to Welfare & Institutions Code Section 16501, and set forth in the California Penal Code.

115.  The specific regulations and laws violated by Defendants, include, but are not limited to the following:

a.  Welfare and Institutions Code §309, which requires a social worker to immediately investigate the circumstances of a child's detention and immediately release the child to his or her parent's custody unless there is an immediate and urgent need to continue detention and there are no reasonable means by which the child can be protected in her home;

b.  CDSS MPP Regulations 31-125, by failing to perform an adequate investigation prior to seizing D.D. minor Plaintiff and releasing her to her abusive mother;

c.  CDSS MPP Regulations 31-130 and 31-135, by improperly requesting law enforcement assist in the removal of MR. DECLUE from D.D. at the time he was protecting her, rather than attempt to obtain a warrant prior to seizing D.D. minor Plaintiff from her father;

d.  CDSS MPP Regulations 31-135.2-.21 and Welfare and Institutions Code

§306(f), for failing to consider and implement the readily available lesser intrusive alternative means in lieu of seizing the minor Plaintiff.

116.  Defendants assumed duties to oversee, monitor and regulate the conduct of their co-Defendants. Plaintiffs relied upon Defendants to fulfill these duties, thereby establishing a special relationship between Plaintiffs and Defendants.

117.  Plaintiffs assert this Cause of Action for Negligence pursuant to California Government Code §§ 815.2, 815.6 and 820.

118.  Government Code section 820.21 creates liability for police, social workers and child protection workers who "conduct investigations or proceedings" when certain acts are committed maliciously. These acts include but are not limited to perjury, fabrication of evidence, and obtaining testimony under duress or undue influence. Malicious conduct is committed either to cause injury or despicable conduct that is committed with a willful and conscious disregard of the rights of others. Defendants are not entitled to immunity here.

119.  At all relevant times mentioned here, each of the Defendants owed a duty of care to members of the public, including the Plaintiffs, to be properly trained and to exercise reasonable care as they perform their duties as social workers and police officers employed by the County and City.

120.  In engaging in the acts, conduct and omissions alleged herein, COUNTY and CITY OF LIVERMORE Defendants, and each of them, acted unreasonably and below the applicable standard of care. In engaging in the acts, conduct, and omissions alleged herein, COUNTY and CITY OF LIVERMORE Defendants, and each of them, actually and proximately caused the injuries and damages alleged herein.

121.  COUNTY and CITY OF LIVERMORE Defendants owed Plaintiffs an affirmative duty of care to exercise reasonable and ordinary care and skill in investigating, documenting, and assessing the Plaintiffs' child welfare circumstances.

122.  Defendants failed to execute their professional responsibilities as proper agents defined by the County's job classification.

123.  Defendants HARRIS and GIACOMETTI failed to execute their professional responsibilities as police officers as defined by the CITY OF LIVERMORE'S job classification.

124.  Defendants, and each of them, violated and/or breached mandatory and non-delegable duties. This includes, but is not limited to, those set forth in regulations in the California Department of Social Services (CDSS) Manual of Policies and Procedures (MPP) established pursuant to Welfare & Institutions Code Section 16501, and set forth in the California Penal Code.

125.  Defendants failed to provide, train, supervise and review the activities of their agents as required and defined by the County's job classification as social worker, mediators, therapists and police officer supervisors'. This is exemplified by the errors and omissions in VALERIES declarations and pleadings and the evidence destroyed by the COURT and Judge Jason Clay.

126.  Upon information and belief, COUNTY not only failed to take the necessary and appropriate actions as a reasonable social worker, which they failed to provide, but also failed to document accurately for court record any pre-placement preventative efforts made or services provided as required pursuant to CDSS DIV 31-315.

127.  At all relevant times, the COUNTY and CITY OF LIVERMORE were under a mandatory duty not to interfere with MR. DECLUE'S custody of the minors unless certain conditions were met, which did not exist here. (See Welf. & Inst. Code §§ 300.2, 305, 306, 307, 307.4, 308, 309, 311, 313, 319, 328, 328.3, 332, 340.)

128.  At all relevant times, the COUNTY and CITY OF LIVERMORE, through its subdivision and entity Department and Police, respectively, were each under a mandatory duty not to interfere with parents' custody of their child unless certain conditions are met, which did not exist here. (See Welf. & Inst. Code § 305, 306, 307, 307.4, 308, 309, 311, 313, 319, 328, 328.3, and 340.)

129.  As further example, and without limitation, as part of the emergency response protocol, the COUNTY through its subdivision and entity, DSS, were required to complete,

among other things, a report outlining and weighing factors for removal such as: the caretakers ability to care for child, any precipitating evidence, the child's characteristics, and family factors, among other things. Despite such an affirmative duty, there was no report inclusive of relevant and mandatory factors such as MR. DECLUE'S ability and desire to care for his child, the lack of any indication of prior abuse or neglect, and numerous other factors indicative of a capable and loving home environment, BECAUSE Defendants never provided implementation of social workers.

130.  Defendants were required to ensure it had authority to remove a child prior to removal. (DSS Manual 31-135(.1).) Despite such a duty, the COUNTY and CITY OF LIVERMORE deprived MR. DECLUE of access to his child and removed minor child from MR. DECLUE'S home without legal authority.

131. In addition to the standard of care and reasonable person Duties, Defendants owed Plaintiffs statutory and regulatory duties imposed by both federal and state law, some of which have been specifically referred to above. Such conduct surmounts to negligence per se.

132.  Defendant County and City also provided inadequate and/or non-existent training, including but not limited to: 1) non-existent and/or inadequate training on the First, Fourth, and Fourteenth Amendments as same apply in interviewing minors and in the context of a child abuse investigation that may involve the removal of a child from their parent(s); 2) the existence and/or use of protective custody warrants provided for under California law; 3) the emotional trauma and psychological damage to a child from removal and prevention; 4) the clearly established law of this federal circuit on the issues of warrantless removals, exigency, least intrusive means, and the proper investigation before removal of a child; 5) state law applicable to juvenile dependency proceedings and the reunification of children with their parents, and/or avoidance of removal entirely; and 6) the weaponizing and retaliation of enforcing unconstitutional restraining orders with no substantiation, to willfully seize minor child from their more safer and competent parent to be with. Because of the zone of danger of negligence that Defendants put Plaintiff in, Plaintiff is entitled to compensation for damages, Am. Jur. § 444; *Stinson v. Bi-Rite Rest. Supply, Inc.* (In re Stinson), 295 B.R. 109 (B.A.P. 9th

Cir. 2003); *Hall v. Marshall*, 145 Or. 221, 27 P.2d 193.; *Dawson v. Wash. Mut. Bank, F.A.*, (9th Cir. 1987); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (quoting *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)).

133. Defendants' actions and inactions as alleged herein and were negligent, careless, mistaken and/or reckless.

134. Defendants' breaches and violations of the duties owed to Plaintiffs were a substantial factor in causing Plaintiffs physical, mental, and emotional pain and suffering.

## **Demand For Jury Trial**

135. Plaintiffs, and each of them, hereby demand a jury trial as to those issues of fact and law so triable.

## XX.   **Prayer For Relief**

136. The actions of Defendants are so egregious and unconstitutionally harmful as to justify and call for Declaratory relief, 28 U.S.C. §§ 2201, 2202, The Declaratory Judgment Act, from this Court in the form of an Order setting forth the nature of their violations and a mandate that such conduct not be repeated and not be condoned and allowed by Defendants and its agents; *Brillhart v. Excess Insurance Co. of America*, *Government Employees Insurance Company v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998).

137. At the landmark case of *Bivens vs. Six Unnamed Narcotics Agents*, supra, our system of laws resulted "remedy was created from thin air, because of a right to remedy, rather than imposing on the Plaintiff an obstruction to remedy."

138. This Prayer starts with paraphrasing from simple Wikipedia.com pertaining to "'strict liability' and 'strict liability' (criminal) and 'vicarious liability.'"

> In tort law, strict liability is the imposition of liability on a party without a finding of fault (such as negligence or tortious intent). The claimant need only prove that the tort occurred and that the defendant was responsible. The law imputes strict liability to situations it considers to be inherently

dangerous. It discourages reckless behavior and needless loss by forcing potential defendants to take every possible precaution. It has the beneficial effect of simplifying and thereby expediting court decisions in these cases, although the application of strict liability may seem unfair or harsh, as in *Re Polemis*.

An early example of strict liability is the rule <u>Rylands v Fletcher,</u> where it was held that "any person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape". If the owner of a zoo keeps lions and tigers, he is liable if the big cats escape and cause damage or injury.

In strict liability situations, although the plaintiff does not have to prove fault, the defendant can raise a defense of absence of fault, especially in cases of product liability, where the defense may argue that the defect was the result of the plaintiff's actions and not of the product, that is, no inference of defect should be drawn solely because an accident occurs. If the plaintiff can prove that the defendant *knew* about the defect before the damages occurred, additional punitive damages can be awarded to the victim in some jurisdictions. The "strict liability doctrine's" most famous advocates were Learned Hand, Benjamin Cardozo, and Roger J. Traynor. Strict liability is sometimes distinguished from absolute liability. In this context, an *actus reus* may be excused from strict liability if due diligence is proved. Absolute liability, however, requires only an *actus reus.*

In criminal law, *strict liability* is liability for which *mens rea* (Latin for "guilty mind") does not have to be proven in relation to one or more elements comprising the *actus reus* (Latin for "guilty act") although intention, recklessness or knowledge may be required in relation to other elements of the offense. The liability is said to be strict because defendants will be convicted even though they were genuinely ignorant of one or more factors that made their acts or omissions criminal. The defendants may therefore not be culpable in any real way, i.e. there is not even criminal negligence, the least blameworthy level of *mens rea.*

Strict liability laws were created in the 19th century to improve working and safety standards in factories. Needing to prove *mens reas* on the part of the factory owners was very difficult and resulted in very few prosecutions. The creation of strict liability offenses meant that convictions were increased. Common strict liability offenses today include the selling of alcohol to underage persons.

These laws are applied either in regulatory offenses enforcing social behaviour where minimal stigma attaches to a person upon conviction, or where society is concerned with the prevention of harm, and wishes to maximise the deterrent value of the offense. The imposition of strict liability may operate very unfairly in individual cases. For example, in Pharmaceutical Society of Great Britain v Storkwain, a pharmacist supplied drugs to a patient who presented a forged doctor's prescription, but was convicted even though

the House of Lords accepted that the pharmacist was blameless. The justification is that the misuse of drugs is a grave social evil and pharmacists should be encouraged to take even unreasonable care to verify prescriptions before supplying drugs. Similarly, where liability is imputed or attributed to another through vicarious liability or corporate liability, the effect of that imputation may be strict liability albeit that, in some cases, the accused will have a *mens rea* imputed and so, in theory, will be as culpable as the actual wrongdoer.

Vicarious liability is a form of a strict, secondary liability that arises under the common law doctrine of agency, respondeat superior.

139.  Notice to principal is notice to agent.  Notice to agent is notice to principal. "Whatever the form in which the Government functions, anyone entering into an arrangement with the Government ***takes*** [emphasis added] the risk of having accurately ascertained that he who purports to work for the Government stays within the bounds of his authority ... and this is so even though as here, the agent was unaware of the limitations upon his authority." (*Federal Crop Insurance Corp. vs. Merrill*).

140.  The effect of Defendants' actions disparages, denies and prejudices substantive natural and constitutional rights, fundamental rights, including but not limited to association, suppression, contracting, due process, prejudices substantive rights, racketeering and perjury. Defendants are guilty of malice, fraud and oppression, as defined in California Civil Code § 3294, unfair OR deceptive practices against senior citizens or disabled persons as defined in California Civil Code § 3345 (the statutory word "practices" would indicate "insured activity"), with aggravating circumstances (aggravating by way of "strict liability" (*mens rea*, **liability from mens rea by way of vicarious liability** whereby <u>society intends "strict liability</u> <u>by deterrent effect to prevent harm by mens rea, a greater attention of society to prevent harm</u> <u>rather than society's attention solely to punishment</u>, at factors of 'an actor's imposing abuse upon qualified immunity itself and abuse on others who enjoy qualified immunity, by 'spreading the liability around, by abusing the immunity, spreading the liability around by osmosis or diffusion to others who enjoy qualified immunity also'")) and Defendants' actions were malicious and done willfully, in concert with each other and in conscious disregard of

the rights and safety of Plaintiffs, which in addition, jeopardizes safety and rights to all citizens; California Civil Code § 1708, in that the actions were calculated to injure Plaintiffs directly and indirectly. As such, Plaintiffs are entitled to recover, in addition to actual damages, punitive damages to punish Defendants during aggravating circumstances also, by a jury and deter future misconduct (the statutory (non-whimsical, non-arbitrary) billable rate (Title 18 United States Code §§ 241, 242, 245; "USE FEE" $250,000 per person AND/OR $500,000 per organization PER DAY OR ANY PART THEREOF AS VALUED BY 18 United States Code Part II, Chapter 227, Subchapter C, 3571 (ALL RIGHTS RESERVED, Uniform Commercial code §§ 1-308, 1-207 for exemplar hypothecation of disposition outright by settlement pre-litigation or post-litigation exemplar settlement hypothecation)));

    A. For actual damages according to proof;

    B. For compensatory damages as permitted by law;

    C. For consequential damages as permitted by law;

    D. For statutory damages as permitted by law;

    E. For punitive damages as permitted by law, including also exemplary damages by fiduciary "duty for *utmost* care" displaced by Misfeasance to Malfeasance;

    F. For restitution relief as permitted by law;

    G. For interest as permitted by law;

    H. For Declaratory Relief;

    I. For reputation damages as permitted by law;

    J. For reasonable fees and costs;

    K. For such other relief as is just and proper;

    L. Loss of anticipated income;

    M. Loss of use of income during the present as distinguished with future income;

    N. reasonable and necessary expenses incurred, like attorneys' fees; and deprivation of any right caused by the loss of liberty;

O. Nominal or compensatory Damages; and

P. Aggravated damages.

141. State and Federal statutes and other damages compensations laws supports compensation to Plaintiffs of $300,000,000.00

Respectfully Submitted,

Dated July 20, 2020

*Alan DeClue*

Alan DeClue, Plaintiff
Self-Represented