1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    ALAN DECLUE, et al.,

8                 Plaintiffs,                    Case No.  20-cv-05808-PJH

9          v.

                                                 **ORDER GRANTING MOTIONS TO**
10   COUNTY OF ALAMEDA, et al.,                   **DISMISS AND DENYING MOTION**
                                                  **FOR PRELIMINARY INJUNCTION**
11                Defendants.
                                                 Re: Dkt. Nos. 12, 14, 17

12

13          Before the court is plaintiff Alan DeClue's ("plaintiff") motion for a preliminary

14   injunction.  Dkt. 12.  Also before the court are defendants County of Alameda's

15   ("Alameda County"), Alameda County's District Attorney's Office ("D.A.'s Office"), and

16   deputy district attorney Nancy O'Malley's ("O'Malley") (jointly, the "Alameda County

17   Defendants") motion to dismiss, Dkt. 14, as well as defendants City of Livermore's

18   ("Livermore"), Livermore Police Chief Michael Harris's ("Harris"), and Livermore Police

19   Officer Paul Giacometti's ("Officer Giacometti") (jointly, the "Livermore Defendants")

20   motion to dismiss, Dkt. 17.  Having read the parties' papers and carefully considered their

21   argument and the relevant legal authority, and good cause appearing, the court hereby

22   **DENIES** plaintiff's motion for a preliminary injunction, **GRANTS** the Alameda County

23   Defendants' motion to dismiss, and **GRANTS** the Livermore Defendants' motion to

24   dismiss.  Additionally, the court **DISMISSES** all claims against the Alameda County

25   Superior Court (the "Superior Court") and Superior Court Judge Jason Clay ("Judge

26   Clay") with prejudice.

27                              **BACKGROUND**

28          On August 18, 2020, plaintiff filed the instant action pursuant to Title 42 U.S.C. §

1983 for various purported constitutional violations arising out of a dispute between him and his former wife, defendant Valerie DeClue ("Valerie"). Dkt. 1 ("Compl."). Stated simply, plaintiff alleges that Valerie, the Alameda County Defendants, the Livermore Defendants, the Superior Court, and Judge Clay, as well as various private persons conspired against him in ongoing state court proceedings concerning the custody of his and Valerie's minor daughter, D.D.[1] The private defendants include Family Law Services, Inc., id. ¶ 10, Terra Firma Diversion Services ("Terra Firma"), id. ¶ 16, and Terra Firma's owner, Bertha Cuellar ("Cuellar"), id. ¶ 17 (collective with Valerie, the "Private Defendants").

Despite their purported service of process, Dkt. 11, none of the Private Defendants filed a responsive pleading to plaintiff's complaint or opposed his motion for a preliminary injunction. Based on the court's review of the docket, it does not appear that plaintiff served the Superior Court or Judge Clay. Regardless, for reasons specified below, the court will sua sponte analyze the claims against the Superior Court and Judge Clay.

## A.    Factual Background

On January 21, 2017, plaintiff was playing with his minor daughter, D.D., at their home in Livermore. Compl. ¶ 25. In the background, a television displayed media coverage of the then-newly inaugurated President Donald Trump. Id. Valerie became angry after seeing that coverage. Id. Plaintiff went to calm her. Id. Valerie responded by threatening to call the police on plaintiff, indicating that she would falsely accuse him of abusing her. Id. After plaintiff tried again to calm her down, she punched him in the face, creating a significant bruise the following day. Id. As Valerie "went through a rage," plaintiff "wrapped his arms" around her and "waited until she gave up and released the phone." Id. Concerned about D.D.'s safety, plaintiff then called the police. Id.

Later that day, Office Giacometti arrived at plaintiff's home. Id. ¶ 26. Valerie falsely told Officer Giacometti that plaintiff abused her. Id. Plaintiff left the home for the

---

[1] Plaintiff included D.D. as a named plaintiff in this action. However, for the reasons provided at Section B.5.below, the court dismisses D.D. from this action.

night "to let things cool off." Id.

On January 22, 2017, plaintiff contacted Officer Giacometti to show him the bruise on his face. Id. ¶ 28. Officer Giacometti informed plaintiff that he made a mistake on the prior day's police report paperwork and would need to speak with his superior officers. Id. Later that day, unspecified officers arrested Valerie on charges of violating California Penal Code § 273.5 for corporal injury to a spouse. Id. The next day, Valerie was released from jail with all charges dropped. Id. ¶ 29. At some point, Valerie hired family law attorney, Cynthia Campanile ("Campanile"). Plaintiff alleges that Campanile "pulled strings" to have Valerie released. Id. He further alleges that an employee at the D.A.'s Office, Annie Esposito ("Esposito"), told him that "O'Malley owed [Campanile] a favor and quickly hung up the phone." Id. ¶ 34. Plaintiff does not allege when that conversation occurred. Id.

On January 30, 2017, the Superior Court, then-Commissioner (now-Judge) Jason Clay presiding, issued a domestic violence restraining order ("DVRO") against plaintiff. Id. ¶ 30. Plaintiff does not attach this DVRO to his complaint. However, he alleges that "after [it] was filed," he "lost custody and has only been able to see D.D. for two hour[] supervised [visits] [sic] on weekends at Terra Firma." Id. ¶ 36. Consistent with that allegation, a subsequent restraining order dated September 29, 2017 (attached by plaintiff to his complaint) details Valerie and D.D. as "protected persons" and generally orders plaintiff not to contact them. Dkt. 1-2 at 2-3. Relatedly, while not alleged in his complaint, plaintiff asserts in his motion that D.D. has "sustained sexual assault and psychological trauma" while in Valerie's custody. Dkt. 12 at 3, 7, 9-10; Dkt. 12-1 at 2-3. In particular, plaintiff says, D.D. has been "sexually assaulted by her therapist." Dkt. 12 at 3.

Plaintiff alleges that, to obtain the DVRO, Valerie, her adult daughters (from another marriage), and Campanile submitted false evidence. Compl. ¶ 30. While plaintiff retained counsel, Matthew Oliveri ("Oliveri"), to challenge the DVRO's issuance, Oliveri failed to challenge Valerie's purportedly false evidentiary submissions. Id. ¶ 31.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Subsequently, plaintiff and Valerie entered marriage dissolution proceedings, which were combined with the prior DVRO-related action. Id. ¶ 33. Plaintiff alleges that, when presiding over the combined action, Judge Clay "covered up" plaintiff's side of the story. Id.

Plaintiff also alleges that Campanile and his attorney (Oliveri) conspired to take advantage of him. Plaintiff alleges that, at a court hearing on May 3, 2017, he "walked in" on Campanile and Oliveri reviewing his income and expense declaration and discussing how much money they could "strategically acquire" from plaintiff. Id. ¶ 35. Subsequently, Campanile and Oliveri met with Judge Clay in chambers and, "shortly after," plaintiff "received an invoice to pay" Campanile $10,000 in attorney's fees. Id. [2]

Later that year, on July 12, 2017, Judge Clay held a further hearing on the DVRO. Id. ¶ 38. During it, Judge Clay ordered, among other things, that the DVRO remain in effect for an additional three years. Id. A few months later, in November 2017, plaintiff terminated his relationship with Oliveri. Id. ¶ 40. Subsequently, in January 2018, plaintiff hired another lawyer, Randy Thomas ("Thomas"). Id. ¶ 42. According to plaintiff, Thomas "has discovered many things that have not gone appropriately in this case" but "has not informed [plaintiff] of what he has discovered . . . and refuses to tell him." Id. ¶ 44. Plaintiff terminated his relationship with Thomas in June 2018. Id. ¶ 46.

Based on the above, plaintiff alleges claims against all defendants for the following:

- "Procedural Due Process, Unlawful Seizure, Invasion of Privacy, and Interruption of Familial Association" premised on defendants' (without differentiation) alleged unlawful seizure of D.D. from plaintiff's custody and the resulting separation. Compl. ¶¶ 51-60.

- "Deprivation of Constitutional Rights – Non-Consensual and Coercive Procedures" premised primarily on the Alameda County Defendants' decision

---

[2] Plaintiff alleges various other facts related to Terra Firma and Cuellar. See, e.g., Compl. ¶ 36. The court will detail those facts as necessary in its analysis below.

to "illegally release . . . and dismiss" criminal charges against Valerie, the Livermore Defendants' failure to "follow-up and restrain" Valerie from carrying out her "premeditated agenda," and the Superior Court's decision to impose the DVRO.  Id. ¶¶ 61-70.

- "Deception in the Presentation of Evidence to the Court" premised on the Superior Court's failure to adequately consider plaintiff's evidence concerning Valerie's alleged assault as well as purported false statements made by Valerie and her attorneys in the state court family law proceedings.  Id. ¶¶ 71-83.

- "Monell-Related Claims – Deprivation of Constitutional Rights" premised on numerous purportedly unlawful policies related to Alameda County's, Livermore's, and the Superior Court's handling of child-parent separation matters.  Id. ¶¶ 84-90.  Plaintiff further alleges that both Alameda County and Livermore failed to provide their agents with adequate training concerning the requisite procedures for separating a child from a parent's custody.  Id. ¶ 132.

- Intentional Infliction of Emotional Distress premised on defendants' (without differentiation) abuse of their "authority" and "relationship" with plaintiffs when seizing D.D.  Id. ¶¶ 91-98.

- Violation of Cal. Civ. Code § 52.1 premised on defendants' (without differentiation) use of evidence and attempt to obtain evidence under duress.  Id. ¶¶ 99-106.

- "Prosecutorial Misconduct, Failure to Prosecute" premised on the D.A.'s Office failure to prosecute Valerie for her alleged assault.  Id. ¶¶ 107-12.

- "Negligence/Breach of Mandatory Statutory Duties" premised on the Alameda County Defendants' and Livermore Defendants' breach of numerous "mandatory and non-delegable duties" related to D.D.'s purported "seizure," "detention," and separation from plaintiff.  Id. ¶¶ 113-34.  Plaintiff further alleges that, prior to separating D.D. from his custody, the Alameda County

1
2
3

Defendants failed to prepare a "report outlining and weighing" various "relevant and mandatory factors" related to D.D.'s care under plaintiff's custody, as required by California state law. Id. ¶ 129.

4

**B.    Procedural Background**

5
6
7
8
9
10
11

A few weeks after initiating this action, on September 11, 2020, plaintiff filed a motion for a "temporary restraining order and/or preliminary injunction." Dkt. 12. The next day, the court issued an order construing that motion as a request for a preliminary injunction. Dkt. 13 at 1. The court also ordered plaintiff to serve all defendants with a copy of his motion and set an ordinary briefing schedule on it. Id. at 2. Only the Livermore Defendants filed an opposition, Dkt. 49, which the Alameda County Defendants joined, Dkt. 50. Plaintiff did not file a reply.

12
13
14
15
16
17
18

On September 14, 2020, two days after the court issued its order construing plaintiff's motion, the Alameda County Defendants filed their motion to dismiss. Dkt. 14. On September 17, 2020, the Livermore Defendants filed their motion to dismiss. Dkt. 17. Plaintiff filed belated oppositions to each motion. Dkts. 52, 56. The Livermore Defendants filed a timely reply, Dkt. 55, while the Alameda County Defendants did not, Dkt. 54. Regardless, the court will consider the parties' belated filings. Plaintiff also filed a supplemental letter, dated October 15, 2020, Dkt. 58, which the court will also consider.

19

**DISCUSSION**

20

**A.    Legal Standards**

21

**1.    Rule 12(b)(6)**

22
23
24
25
26
27
28

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Rule 8 requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), dismissal "is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). While the court is to accept as true all the factual allegations in the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    complaint, legally conclusory statements, not supported by actual factual allegations,

2    need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint

3    must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell

4    Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007).

5         As a general matter, the court should limit its Rule 12(b)(6) analysis to the

6    contents of the complaint, although it may consider documents "whose contents are

7    alleged in a complaint and whose authenticity no party questions, but which are not

8    physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th

9    Cir. 2005); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("a court can consider a

10   document on which the complaint relies if the document is central to the plaintiff's claim,

11   and no party questions the authenticity of the document"). The court may also consider

12   matters that are properly the subject of judicial notice, Lee v. City of L.A., 250 F.3d 668,

13   688–89 (9th Cir. 2001), exhibits attached to the complaint, Hal Roach Studios, Inc. v.

14   Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents

15   referenced extensively in the complaint and documents that form the basis of the

16   plaintiff's claims, No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding

17   Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

18        A district court "should grant [a] plaintiff leave to amend if the complaint can

19   possibly be cured by additional factual allegations," however, dismissal without leave "is

20   proper if it is clear that the complaint could not be saved by amendment." Somers, 729

21   F.3d at 960.

22        **2.      Preliminary Injunction**

23        An injunction is a matter of equitable discretion and is "an extraordinary remedy

24   that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."

25   Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); see also Munaf v. Geren,

26   553 U.S. 674, 689–90 (2008).  A preliminary injunction "should not be granted unless the

27   movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong,

28   520 U.S. 968, 972 (1997) (per curiam). "A plaintiff seeking a preliminary injunction must

1  establish that [1] he is likely to succeed on the merits, that [2] he is likely to suffer

2  irreparable harm in the absence of preliminary relief, that [3] the balance of equities tips

3  in his favor, and that [4] an injunction is in the public interest." Winter, 555 U.S. at 20.

4      Alternatively, the Ninth Circuit employs a "sliding scale" approach whereby

5  "'serious questions going to the merits' and a hardship balance that tips sharply toward

6  the plaintiff can support issuance of an injunction, assuming the other two elements of the

7  Winter test are also met." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th

8  Cir. 2011). "That is, 'serious questions going to the merits' and a balance of hardships

9  that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so

10 long as the plaintiff also shows that there is a likelihood of irreparable injury and that the

11 injunction is in the public interest." Id. at 1135; see also Ramos v. Wolf, — F.3d —, 2020

12 WL 5509753, at *10 (9th Cir. Sept. 14, 2020) (describing sliding scale approach).

**B.    Failure to State a Claim Analysis**

13

14      **1.    The Federal Law Claims Against the Alameda County Defendants**

15      The Alameda County Defendants argue that the claims against them, including the

16 first four brought under § 1983 (the "federal law claims"), fail for three independent

17 reasons: (1) they are barred by the prosecutorial immunity doctrine set forth under Imbler

18 v. Pachtman, 424 U.S. 409, 430-31 (1976); (2) they are barred by the Eleventh

19 Amendment's sovereign immunity doctrine; and (3) they are unsupported by any well-

20 pled allegations.  The court will analyze each ground in turn.

21          **a.    The Prosecutorial Immunity Doctrine Bars the Federal Law**

22                  **Claims Against These Defendants**

23      The Supreme Court has acknowledged that "prosecutors are absolutely immune

24 from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting

25 the State's case" . . . insofar as that conduct is 'intimately associated with the judicial

26 phase of the criminal process.'" Burns v. Reed, 500 U.S. 478, 486 (1991).  The Ninth

27 Circuit has extended this rule to a prosecutor's decision to abstain from initiating such

28 proceedings.  Roe v. City & Cty. of San Francisco, 109 F.3d 578, 583 (9th Cir. 1997)

United States District Court
Northern District of California

1
2
3
4

("Although it is well established that a prosecutor has absolute immunity for the decision to prosecute . . . the question of whether a prosecutor enjoys absolute immunity for the decision ***not*** to prosecute is a question of first impression in this circuit. However, we have little difficulty in concluding affirmatively on this issue.") (emphasis added).

5
6
7
8
9
10
11
12
13

Here, the only non-conclusory factual allegation against the Alameda County Defendants concerns the D.A.'s Office's decision to "release" Valerie from jail and "dismiss" any criminal charges against her.  Compl. ¶ 63.  Such decision falls squarely within the parameters of those subject to absolute immunity.  Roe, 109 F.3d at 583 ("Indeed, public policy considerations make an even stronger argument for absolute immunity for failure to prosecute than for actual prosecution. The decision to charge a defendant with a crime may well be the most critical determination in the entire prosecutorial process.").  No amendment to plaintiff's claims could change the actionability of this decision.

14
15
16
17
18
19
20
21
22

Plaintiff fails to specify any other action taken by these defendants to support the federal claims against them.  See Id. ¶¶ 51-60 (allegations relating to deprivation of due process by the Superior Court in plaintiff's marriage dissolution proceedings), ¶¶ 71-83 (allegations relating to the Private Defendants' presentation of false evidence in that same proceeding), ¶¶ 84-90 (conclusory allegations primarily relating to Alameda County's purported unlawful policies concerning parent-child separation).  Given that neither the complaint nor plaintiff's opposition suggest any alternative unlawful action taken by the Alameda County Defendants, the federal claims against these defendants are subject to dismissal with prejudice under the absolute immunity doctrine.

23
24

**b.      The Sovereign Immunity Doctrine Bars the Federal Law Claims Against These Defendants**

25
26
27
28

The Eleventh Amendment generally immunizes states against lawsuits by their own citizens. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). Such immunity extends to state agencies and state officers when the lawsuits against them are "in fact against the sovereign if the decree would operate against the latter." Pennhurst State School & Hosp.

9

1   v. Halderman, 465 U.S. 89, 101 (1984).  The California Supreme Court has ruled that,

2   when prosecuting criminal violations of state law, a California county's district attorney's

3   office represents the state.  Pitts v. Cty. of Kern, 17 Cal. 4th 340, 362 (1998) ("In sum, we

4   conclude that when preparing to prosecute and when prosecuting criminal violations of

5   state law, a district attorney represents the state and is not a policymaker for the

6   county.").

7          Here, the sovereign immunity doctrine separately bars all federal law claims

8   against the Alameda County Defendants.  To be clear, the California Supreme Court's

9   holding in Pitts is not binding on this court because that determination rests on the

10  interpretation and application of federal law.  Pitts, 17 Cal. 4th at 353 (citing McMillian v.

11  Monroe Cty., 520 U.S. 781 (1997) as providing "an analytical framework for resolving the

12  question of which entity a government official represents when performing a certain

13  function.").  That said, the Pitts court's determination remains persuasive.  Since plaintiff

14  failed to identify any binding authority contradicting it and, based on the court's review, its

15  holding remains viable, Goldstein v. City of Long Beach, 715 F.3d 750, 760-61 (9th Cir.

16  2013) ("Similarly, the County is incorrect that we are bound by the California Supreme

17  Court's determination in Pitts that the district attorney acts on behalf of the state for some

18  purposes. . . . Nonetheless, we need not disrupt the California Supreme Court's

19  conclusion because Pitts addressed a district attorney function different than the one we

20  confront today."), the court will adopt it here.

21         Again, the only non-conclusory factual allegation against the Alameda County

22  Defendants concerns the decision not to pursue criminal charges against Valerie for

23  abusing plaintiff.  That decision falls within the D.A.'s Office's exercise of state authority

24  when prosecuting violations of state law.  As noted above, plaintiff fails to specify any

25  other unlawful action taken by the Alameda County Defendants to support the federal

26  claims against them and neither his complaint nor opposition suggest any such action.

27  Accordingly, the federal claims against these defendants are separately subject to

28  dismissal with prejudice under the sovereign immunity doctrine.

United States District Court
Northern District of California

10

1

2

**c.      Plaintiff Failed to Allege an Underlying Violation of a**

**Constitutional Right by These Defendants**

3

Title 42 U.S.C. § 1983 "provides a cause of action for the deprivation of any rights,

4

privileges, or immunities secured by the Constitution and laws of the United States."

5

Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990). To state a claim under § 1983,

6

a plaintiff must allege the following: (1) he suffered a violation of a right conferred by the

7

Constitution or laws of the United States; and (2) such violation was committed by a

8

person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).  Here,

9

plaintiff failed to allege sufficient non-conclusory facts establishing these requirements

10

with respect to each of the federal law claims against the Alameda County Defendants.

11

***First***, with respect to his claim for deprivation of due process, plaintiff failed to

12

allege a constitutional right to custody of D.D under the circumstances.  In his complaint,

13

plaintiff attaches two state court documents expressly undermining his contention that he

14

was unlawfully deprived of custody of his daughter.  The first filing shows that the state

15

court determined that Valerie was entitled to primary custody of D.D. Dkt. 1-2 at 9 (Child

16

Custody and Visitation Order detailing "Mom" as entitled to both "legal" and "physical"

17

custody of D.D.).  The second filing suggests that plaintiff stipulated to that arrangement.

18

Id. at 17 (Minutes stating that "[t]he court adopts the stipulation of the parties as recited in

19

open court by [plaintiff's] counsel on the record as the order of the court . . . [Valerie's]

20

Request for Reissuance of the Temporary Restraining Order is Granted.").  While plaintiff

21

quotes numerous case law excerpts in his pleadings concerning parental rights, he fails

22

to show how such authority establishes a parent's right to retain custody of a child when

23

a state court has afforded such parent process prior to ordering separation. Regardless,

24

even if plaintiff had established such a right, he does not allege that the Alameda County

25

Defendants violated it.  Rather, pursuant to his own allegations, the Superior Court,

26

Compl. ¶¶ 30, 36, would be responsible for such violation.

27

***Second***, with respect to his claim for "coercive" procedures, plaintiff failed to

28

proffer any authority recognizing that a victim of an alleged crime possesses a

11

constitutional right to require the state to pursue criminal charges.

    **Third**, with respect to his claim for judicial deception, plaintiff does not allege any non-conclusory facts showing that the Alameda County Defendants participated in presenting the supposedly false evidence to the Superior Court.  To the extent discernable, all well-pled facts concerning the Superior Court's consideration of such evidence related to either Judge Clay or the Private Defendants.  Compl. ¶¶ 71-83.

    **Fourth**, with respect to his Monell claim, plaintiff proffers only conclusory allegations to show that Alameda County maintains a policy responsible for violating his constitutional rights.  For example, the county has a "polic[y] [sic] of using undue influence, coercion and/or duress to cause [him] to enter into alleged 'voluntary' agreements, including with the threat of removal of his child if he do [sic] not move out." Id. ¶ 85(a).  This allegation lacks any specifics about the subject "threats" or how Alameda County forced him to enter into the referenced agreements.  Moreover, as decided immediately above, plaintiff failed to show that he has a constitutional right to maintain custody of D.D. in the first instance.  Absent such showing, plaintiff necessarily cannot allege an actionable violation under Monell.  Accordingly, the federal claims against these defendants are separately subject to dismissal for failure to state a claim.

## 2.    The Federal Law Claims Against the Livermore Defendants

    The Livermore Defendants argue that the federal law claims against them fail for two independent reasons: (1) they are barred by the statute of limitations; (2) they are unsupported by any well-pled allegations.  The court analyzes each ground below.

### a.    The Statute of Limitations Bars the Federal Law Claims Against These Defendants

    "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010).  In the Ninth Circuit, "[t]he applicable statute of limitations for actions brought pursuant to 42 U.S.C. § 1983 is the forum state's statute of limitations

1   for personal injury actions." Whidbee v. Pierce Cty., 857 F.3d 1019, 1022 (9th Cir. 2017).

2   Under California law, personal injury actions are subject to a two-year statute of

3   limitations period.  Cal. Civ. Pro. § 335.1.  "While state law determines the period of

4   limitations, federal law determines when a cause of action accrues." Cline v. Brusett, 661

5   F.2d 108, 110 (9th Cir. 1981).  "Under federal law, a cause of action generally accrues

6   when a plaintiff knows or has reason to know of the injury which is the basis of his

7   action." Id.

8        Based on the plaintiff's complaint, it appears that the most recent wrongful act by

9   the Livermore Defendants concerned D.D.'s separation from plaintiff.  Such separation

10  occurred "after the DVRO" was filed, which occurred on January 30, 2017.  Compl. ¶¶ 30,

11  36.  Given the obviousness of losing custody of D.D., plaintiff plainly had reason to know

12  of the purported injury resulting from the subject separation when it occurred.  Despite

13  such knowledge, plaintiff waited over three and a half years to initiate the instant action.

14  Thus, the federal law claims against these defendants are barred by the statute of

15  limitations absent an applicable exception or limitation.

16       In his opposition briefs, plaintiff argues that the statute of limitations does not apply

17  here because the Livermore Defendants "continue[d]" to violate his rights from "2017 to

18  present."  Dkt. 56 at 10; Dkt. 52 at 12.  To substantiate such ongoing violations, he

19  summarily asserts that Livermore police deputies have "harass[ed]" him for three years

20  because the "deputies occasionally would attempt to enforce the illegal DVRO and

21  threaten [plaintiff] with arrest."  Id. at 6.

22       As an initial matter, plaintiff's complaint lacks any allegation of the above

23  referenced "harassment" by the Livermore Defendants (or their deputies).  Regardless,

24  even if plaintiff had alleged such ongoing contact by Livermore police deputies, it would

25  not salvage his federal law claims.  To be sure, plaintiff's use of the adjective "harassing"

26  to describe the ongoing contact is conclusory and, thus, would be disregarded on a future

27  motion to dismiss.  More importantly, though, as plaintiff's own opposition shows, the

28  subject contact was driven by the deputies' "enforcing" the DVRO, Dkt. 56 at 6, and

United States District Court
Northern District of California

13

1   plaintiff fails to proffer any authority showing how or why such a lawful exercise of

2   authority could form the basis for a constitutional violation

3        More practically, though, the court notes the circumstances under which plaintiff

4   introduces the subject ongoing harassment by Livermore police deputies.  The Livermore

5   Defendants raised their statute of limitations defense in their opening brief, which they

6   filed on September 17, 2020. Dkt. 17.  Plaintiff failed to file a timely opposition to their

7   motion.  Nonetheless, on October 7, 2020, the Livermore Defendants filed a reply,

8   preemptively addressing plaintiff's suggestion (in his opposition to the Alameda County

9   Defendants' motion) that some violations remained "continuous."  Dkt. 55 at 2-3.  They

10  argued that, to the extent plaintiff meant to assert ongoing harm by them, such harm

11  appears to be premised on the fact that plaintiff "still does not have custody of his

12  daughter."  Id. at 3.  Citing district court case law, the Livermore Defendants then pointed

13  out that such a fact may not toll the statute of limitations.  Id.  The next day, plaintiff filed

14  his tardy opposition raising for the first time the subject ongoing contact by Livermore

15  deputies as an alternative ground for tolling the limitations period.  Changes in plaintiff's

16  explanation aside, because any amendment concerning an officer's enforcement of the

17  DVRO would not salvage his federal law claims against the Livermore Defendants, they

18  are time-barred by the statute of limitations.  Accordingly, the federal claims against these

19  defendants are subject to dismissal with prejudice under the statute of limitations.

20        **b.      Plaintiff's Claims Against These Defendants Rest on**

21              **Conclusory and Implausible Allegations**

22        As previously noted, plaintiff brings all four of his federal law claims against all

23  defendants without differentiation.  For the same reasons provided in Section 1.C. above,

24  plaintiff failed to allege a threshold constitutional right to support his federal law claims in

25  the first instance.  Regardless, even if plaintiff had alleged such an underlying

26  constitutional right, he still failed to allege that any of the Livermore Defendants violated

27  any such right.

28        ***First***, with respect to his claim for deprivation of due process, plaintiff does not

United States District Court
Northern District of California

14

allege that the Livermore Defendants participated in or were otherwise connected to the state court proceedings.  Plaintiff's newly added assertion (that Livermore police deputies have harassed him by enforcing the DVRO) does not provide such connection.  The process (or lack thereof) that goes into a judicial order is distinct from its enforcement.

**Second**, with respect to his claim of coercive procedures, plaintiff does not allege or otherwise suggest that the Livermore Defendants controlled the D.A.'s Office's decision not to pursue charges against Valerie.  Nor can he.  As an institutional matter, that decision rests with the prosecutor, not law enforcement.

**Third**, with respect to his claim for judicial deception, plaintiff does not allege that the Livermore Defendants participated in presenting the supposedly false evidence in the state court proceedings.  Again, to the extent discernable, all well-pled facts concerning the Superior Court's consideration of such evidence related to either Judge Clay or the Private Defendants.  Id. ¶¶ 71-83.

**Fourth**, with respect to his <u>Monell</u> claim, plaintiff does not adequately allege that Livermore has a policy responsible for violating his constitutional rights.  Instead, to the extent discernable, the policies identified by plaintiff (<u>id.</u> ¶¶ 85 (a)-(g)) appear to concern only Alameda County, not Livermore.  In any event, even if those policies were maintained by Livermore, plaintiff fails to explain why they are deficient or how they harmed plaintiff.  Accordingly, the federal claims against these defendants are separately subject to dismissal for failure to state a claim.

### 3.	The Claims Against the Superior Court and Judge Clay Are Subject to Dismissal with Prejudice

The Ninth Circuit has recognized that a district court may sua sponte dismiss claims against judicial officers that are barred by the judicial immunity doctrine or <u>Rooker-Feldman</u> doctrine.  <u>Kinney v. Cantil-Sakauye</u>, 723 F. App'x 562 (9th Cir. 2018), <u>cert. denied,</u> 139 S. Ct. 1336 (2019) ("[plaintiff] appeals pro se from the district court's order dismissing sua sponte his action arising from state court proceedings. . . . The district court properly dismissed [plaintiff's] claims for damages on the basis of judicial immunity

and [plaintiff's] claims for injunctive and declaratory relief as barred by the <u>Rooker-Feldman</u> doctrine.").  A district court may take such action independent of any in forma pauperis review conducted under Title 28 U.S.C. § 1915.  <u>Kinney v. Cantil-Sakauye</u>, No. 17-CV-01607-JST, Dkt. 1 (showing filing fee paid).  The court will exercise its authority to sua sponte analyze the claims against the Superior Court and Judge Clay.

### a.    Judicial Immunity Bars the Claims Against These Defendants

"Anglo–American common law has long recognized judicial immunity" as a "sweeping form of immunity for acts performed by judges that relate to the 'judicial process.'" <u>In re Castillo</u>, 297 F.3d 940, 947 (9th Cir. 2002), <u>as amended</u> (Sept. 6, 2002) (citations omitted).  "This absolute immunity insulates judges from charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malicious or corrupt motives . . . or when the exercise of judicial authority is 'flawed by the commission of grave procedural errors.'" <u>Id.</u>  "Judicial immunity discourages collateral attacks on final judgments through civil suits, and thus promotes the use of 'appellate procedures as the standard system for correcting judicial error.'" <u>Id.</u>   "Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review."  <u>Id.</u>

Here, the alleged misconduct by Judge Clay squarely relates to the judicial process.  His acts, which plaintiff attributes to the Superior Court,[3] include the following: (1) granting the DVRO, Compl. ¶ 30; (2) ignoring plaintiff's evidence, <u>id.</u> ¶ 33; Dkt. 58 at 1; (3) "conspiring" against plaintiff when making decisions on the merits of the state court proceeding, Dkt. 58 at 1, including by privately meeting with counsel "in his chambers," Compl. ¶ 35; (4) ordering the DVRO to remain in effect for an additional three years, <u>id.</u> ¶ 38; and (5) generally being biased against plaintiff, <u>id.</u> ¶ 59.

To be sure, the court has read, appreciates, and understands plaintiff's October 15, 2020 supplemental letter (Dkt. 58) reiterating the circumstances underlying his claim

---

[3] Plaintiff does not allege any misconduct by the Superior Court independent of that taken by Judge Clay.

United States District Court
Northern District of California

against these defendants for deprivation of due process.[4]  Whatever the factual merits of

such circumstances, they do not change the law immunizing judicial officers against legal

claims for acts taken or decisions made in the course of the judicial process.  To the

extent plaintiff means to challenge the validity of the DVRO (as opposed to suing the

Superior Court or Judge Clay for damages), a reviewing court in the state court system is

the proper forum for such a challenge.  In re Castillo, 297 F.3d at 947 ("Judicial immunity

discourages collateral attacks on final judgments through civil suits, and thus promotes

the use of 'appellate procedures as the standard system for correcting judicial error.'").

Either way, the claims against the Superior Court and Judge Clay are dismissed with

prejudice on the basis of judicial immunity.

> **b.    Rooker-Feldman Bars the Claims Against These Defendants**

The Ninth Circuit has explained that "Rooker–Feldman prohibits a federal district

court from exercising subject matter jurisdiction over a suit that is a de facto appeal from

a state court judgment."  Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004).

Such suits extend to those brought pursuant to § 1983 under a theory of deprivation of

due process in the state court action.  Bianchi v. Rylaarsdam, 334 F.3d 895, 901 (9th Cir.

2003) ("'Rooker–Feldman bars any suit that seeks to disrupt or undo a prior state-court

judgment, regardless of whether the state-court proceeding afforded the federal-court

plaintiff a full and fair opportunity to litigate her claims.'").

As part of his deprivation of due process claim against these defendants, plaintiff

expressly requests that the court "set aside" (Dkt. 12 at 1, 3) or enjoin (Dkt. 58 at 1) the

DVRO.  Thus, it appears that claim is independently barred by the Rooker-Feldman

doctrine.  Given that the gravamen of plaintiff's grievance with the Superior Court and

Judge Clay focuses on the process afforded in the state court proceeding, the entire

---

[4] The court also notes that, with only a single exception, all of its civil motions have been
vacated for the past six months in light of the pandemic.  While the court understands
plaintiff's suggested frustration at not having a hearing on his motion, its decision to
vacate that hearing date is well within the court's discretion and consistent with its
treatment of prior similar motions.

1   action against them is also subject to sua sponte dismissal for lack of subject matter

2   jurisdiction.  To be clear, the dismissal of the claims against these defendants does not

3   bar plaintiff from pursuing any method of review available in the state court system to

4   challenge the DVRO.

5           **4.     The Court Lacks Jurisdiction Over the State Law Claims against the**

6                   **Alameda County Defendants and Livermore Defendants**

7           "The district courts of the United States . . . are 'courts of limited jurisdiction. They

8   possess only that power authorized by Constitution and statute.'"  Exxon Mobil Corp. v.

9   Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).  "In order to provide a federal forum for

10  plaintiffs who seek to vindicate federal rights, Congress has conferred on the district

11  courts original jurisdiction in federal-question cases—civil actions that arise under the

12  Constitution, laws, or treaties of the United States."  Id.  "Although the district courts may

13  not exercise jurisdiction absent a statutory basis, it is well established—in certain classes

14  of cases—that, once a court has original jurisdiction over some claims in the action, it

15  may exercise supplemental jurisdiction over additional claims that are part of the same

16  case or controversy."  Id.  Such jurisdiction arises under Title 28 U.S.C. § 1367(a).

17          The Supreme Court has characterized § 1367(a) as providing district courts "a

18  broad grant of supplemental jurisdiction over other claims within the same case or

19  controversy, as long as the action is one in which the district courts would have original

20  jurisdiction."  Exxon Mobil Corp., 545 U.S. at 558.  The Ninth Circuit has explained that

21  the term "'[o]riginal jurisdiction' in subsection (a) refers to jurisdiction established by

22  looking for any claim in the complaint over which there is subject matter jurisdiction."

23  Gibson v. Chrysler Corp., 261 F.3d 927, 940 (9th Cir. 2001), holding modified by Exxon

24  Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005).

25          Here, plaintiff asserts that the court maintains subject matter jurisdiction over this

26  action because his federal law claims, brought under § 1983, raise a federal question.

27

28

1   Compl. ¶¶ 1-2.[5]   He acknowledges that the court may adjudicate his remaining state law

2   claims pursuant to the supplemental jurisdiction conferred by § 1367(a).  Id. ¶ 3.

3           As detailed above, the court dismissed all federal law claims against the Alameda

4   County Defendants and Livermore Defendants with prejudice.  The remaining claims

5   against them rest on only California state law.  Id. ¶¶ 91-98 (intentional infliction of

6   emotional distress; ¶¶ 99-106 (violation of Civil Code § 52.1); ¶¶ 107-12 ("prosecutorial

7   misconduct"); ¶¶ 113-34 (negligence and breach of duties).  Both the Alameda County

8   Defendants and Livermore Defendants are California residents.  Id. ¶¶ 8, 11-15.  Thus,

9   the court lacks any basis to assert subject matter jurisdiction over plaintiff's action as it

10   pertains to them.  Absent such basis, the court may not exercise supplemental

11   jurisdiction over the state law claims against them.  Scott v. Pasadena Unified Sch. Dist.,

12   306 F.3d 646, 664 (9th Cir. 2002).  Accordingly, the court dismisses all remaining state

13   law claims against the Alameda County Defendants and Livermore Defendants without

14   prejudice.[6]  Wade v. Reg'l Credit Ass'n, 87 F.3d 1098, 1101 (9th Cir. 1996)  ("Where a

15   district court dismisses a federal claim, leaving only state claims for resolution, it should

16   decline jurisdiction over the state claims and dismiss them without prejudice.").

17       **5.      The Court Dismisses D.D. from This Action Without Prejudice**

18           Under Rule 17, an individual's capacity to sue is determined by the law of the state

19   of his or her domicile.  Fed. R. Civ. Pro. 17(b)(1).  "Under California law, minors may not

20   file suit unless a guardian conducts the proceedings."  Belinda K. v. Cty. of Alameda,

21   2011 WL 2690356, at *4 (N.D. Cal. July 8, 2011); Cal. Civ. Pro. § 372.  Absent a general

22   guardian, a minor may sue by a guardian ad litem.  Fed. R. Civ. Pro. 17(c)(2).  To protect

23

24   [5] While plaintiff purports to seek relief pursuant to Title 28 U.S.C. § 2201-02, he fails to
    proffer any allegation or argument substantiating his right to declaratory judgment.  To

25   the extent he seeks a declaratory judgment rendering the DVRO invalid, such request
    fails for the same reasons detailed in Section B.3. above.

26   [6] While plaintiff may, as a technical matter, refile those claims in state court, it appears
    very unlikely that plaintiff would succeed on them.  Critically, it seems all such claims are

27   barred by some combination of the state prosecutorial immunity statutes (California
    Government Code § 820.6), the applicable two-year statute of limitations, failure to

28   comply with the claim presentation timing requirements (California Government Code §
    911.2), and, in any event, rest on conclusory allegations of wrongdoing.

1    the interests of the minor, the court must appoint such guardian ad litem.  Id.  Absent a

2    conflict of interest, a parent may serve as guardian ad litem.  Belinda K., 2011 WL

3    2690356, at *4.  However, the Ninth Circuit has held "that a parent or guardian cannot

4    bring an action on behalf of a minor child without retaining a lawyer." Johns v. Cty. of San

5    Diego, 114 F.3d 874, 877 (9th Cir. 1997).

6         Plaintiff names both himself and his daughter, D.D., as litigants in this action.

7    Compl. ¶¶ 6-7.  On the caption of his complaint, plaintiff acknowledges that he is "self-

8    represented."  Thus, he is not authorized to practice law.  Given that, plaintiff may not

9    "represent," id. ¶ 7, his daughter in this action.  In any event, the court has neither

10   appointed plaintiff guardian ad litem nor has plaintiff made such request.  Given the

11   above, the court dismisses D.D. from this action.  Such dismissal is without prejudice with

12   respect to any claims that **D.D.** might have against any defendant, including, without

13   limitation, any premised on sexual abuse while in Valerie's custody.

14   **C.    Preliminary Injunction Analysis**

15        In his motion for a preliminary injunction, plaintiff asks that the court order the

16   following preliminary relief:

17   •    Enjoin defendants from retaliating against plaintiff "by setting aside or striking

18        defendants' unlawful restraining order," Dkt. 12 at 1, 4, 11; and

19   •    Order that D.D. be placed in plaintiff's custody, id.

20        For the various reasons detailed below, the court denies the requested relief as it

21   pertains to all defendants.

22        **1.    Plaintiff Failed to Show a Likelihood of Success on the Merits**

23             **a.    The Alameda County Defendants and the Livermore Defendants**

24        The court has concluded that plaintiff cannot state a viable claim against the

25   Alameda County Defendants or Livermore Defendants in this court.  Given that

26   conclusion, plaintiff necessarily cannot show "serious questions going to the merits" of his

27   claims against these defendants, All. for the Wild Rockies, 632 F.3d at 1132, or that he is

28   otherwise "likely to succeed" on them, Winter, 555 U.S. at 20.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b.    The Superior Court and Judge Clay

The court has concluded that the judicial immunity doctrine and Rooker-Feldman doctrine both bar any claim against the Superior Court or Judge Clay.  Again, then, plaintiff necessarily cannot show that he is likely to succeed on his claims against them.

### c.    The Private Defendants

The court concludes that plaintiff has not (and cannot) show serious questions going to the merits of the claims against the Private Defendants or that he is likely to succeed on them.  Critically, plaintiff failed to identify any independent act taken by the Private Defendants.  Instead, the claims against them derive from the alleged misconduct of the Alameda County Defendants, Livermore Defendants, the Superior Court, or Judge Clay.  However, as explained above, plaintiff cannot state an actionable claim against any of those defendants in this court.  Incidentally, then, it appears plaintiff cannot state an actionable claim against the Private Defendants.

In any event, the claims against the Private Defendants also appear likely to fail for a related but independent reason: plaintiff has not alleged any *state action* taken by the Private Defendants.  Absent such action, plaintiff lacks a basis to pursue a § 1983 claim against these defendants.  Without such basis, the court would lack subject matter jurisdiction over what remains of his action because it would not raise a federal question and the Private Defendants all reside in California, Compl. ¶¶ 10, 16-18.

### 2.    Plaintiff Failed to Establish Any of the Remaining Factors

Plaintiff also failed to show that any of the remaining preliminary injunction factors cut in favor of granting the requested relief.  Critically, in his complaint, plaintiff acknowledges the fact that he lost custody of D.D. over three years ago.  Compl. ¶¶ 30, 36.  That longstanding fact undermines any showing that he likely faces "irreparable harm in the absence of preliminary relief."  Winter, 555 U.S. at 20.  And, while exceptionally troubling, plaintiff's summary assertion in his motion that D.D. "was sexually assaulted" by an unspecified therapist, Dkt. 12-1 at 2, is conclusory and lacks any evidentiary support.  Such unsubstantiated statements are insufficient to find irreparable harm.  Herb

Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc., 736 F.3d 1239, 1250 (9th Cir. 2013) ("[defendant-appellant asserts that the district court abused its discretion by relying on 'unsupported and conclusory statements regarding harm [plaintiff-appellee] *might* suffer.' We agree.") (italics in the original). The Livermore Defendants called-out this shortcoming in their opposition. Dkt. 49 at 10. Plaintiff offered no response.

Additionally, because plaintiff relies on that same summary assertion of sexual assault to show that the balance of equities tips in his favor, Dkt. 12 at 10, he failed to establish that factor. And while plaintiff might be correct that "[i]t is always in the public interest to prevent the violation of a party's constitutional right," id., he failed to show any such violation in the first instance.

In short, plaintiff failed to establish any factor in support of his requests for preliminary relief against any defendant. Thus, the court denies his motion in its entirety.

## CONCLUSION

For the foregoing reasons, the court **GRANTS** both the Alameda County Defendants' motion to dismiss (Dkt. 14) and the Livermore City Defendants' motion to dismiss (Dkt. 17) the federal law claims against them with prejudice. Given such dismissal, the court lacks any basis to exercise supplemental jurisdiction over the remaining state law claims against these defendants. Thus, the court **DISMISSES** all state law claims against these defendants without prejudice. Although plaintiff may refile those claims in state court, he may **not** refile them in this federal court. Separately, because all claims against the Superior Court and Judge Clay are barred by judicial immunity and the Rooker-Feldman doctrine, the court also **DISMISSES** all claims against them with prejudice. To be clear, then, the only remaining claims in this action are those by plaintiff (not D.D.) against the Private Defendants (i.e., Valerie, Family Law Services, Terra Firma, and Cuellar), none of whom have appeared and plaintiff's request for entry of their default has been denied by the Clerk. Finally, because plaintiff has failed to show any factor necessary to establish a right to the preliminary relief he requests, the court **DENIES** his motion for a preliminary injunction (Dkt. 12) as it pertains to all defendants.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: October 30, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge